UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-1967(JMR/FLN)

| | | |
|---|---|---|
| Patricia Sornsen | ) | ORDER |
| v. | ) | |
| The Wackenhut Corporation | ) | |

Plaintiff commenced this action in Ramsey County District Court. The matter was properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

Defendant seeks summary judgment. Plaintiff has voluntarily dismissed her claims of sexual harassment, negligent infliction of emotion distress, negligence, and pregnancy discrimination to narrow the issues for trial. Her only remaining claims are of retaliatory/reprisal discrimination under Title VII and the Minnesota Human Rights Act ("MHRA"). 42 U.S.C. § 2000e-3; Minn. Stat. § 363.03, subd. 7. After reviewing the submissions of the parties and the arguments of counsel, the Court finds plaintiff has failed to demonstrate a triable case of retaliatory discrimination. Accordingly, defendant's motion for summary judgment is granted; plaintiff's complaint is dismissed.

I. Background

Ms. Sornsen began working for Wackenhut Corporation in Roseville, Minnesota, on August 21, 1998. She began her employment as a receptionist. She was later promoted to administrative assistant, and finally to human resource manager. On September 6,

FILED FEB 27 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 27 2003
DEPUTY CLERK

2001,[1] her employment was terminated for falsifying company documents by failing to record a positive drug test for Larry Casady, Jr.

A. Sornsen's Complaints of Sexual Harassment

While employed at Wackenhut, Ms. Sornsen complained of two incidents of sexual harassment. First, she complained to her supervisor, Vice President Carl Page ("Page"), about comments made on March 16, 2001, by Operations Manager Brad Anderson ("Anderson"). She told Page that Anderson joked about her supposed fondness for "toothless" men, and that she felt those comments were "too personal." Page assured plaintiff he would speak with Anderson and take appropriate measures to resolve her concerns.

Page interviewed Sornsen and counseled Anderson about his comments. Anderson was then required to view a sensitivity training videotape and read materials concerning sexual harassment. On March 29, 2001, Sornsen sent Page an internal memo thanking him for his response to her complaint and stating, "the situation was handled to the best of anyone's capability," and also to her "total satisfaction." Harristhal Aff., Ex. W.

---

[1]There appears to be an inconsistency with respect to the precise duration of Sornsen's employment at Wackenhut. Although her complaint and her brief claims she "was employed by Defendant . . . from approximately August 21, 1998 through September 19, 2001," her Memo in Opposition to Defendant's Motion for Summary Judgment states "she was terminated by Defendant on September 6, 2001." p. 2-3, Pl's. Memo. in Opp'n. to Def's Mot. For Summ. J. This inconsistency is irrelevant to the resolution of the present summary judgment motion.

At her deposition, however, plaintiff claimed she changed her mind about the way the situation was handled "within a couple of days." Sornsen Depo. p. 233. She did not, however, further pursue the matter. According to Ms. Sornsen, this was because "[Anderson] started treating people better on the sexual harassment part." Id.

The second instance occurred during the summer of 2001, when plaintiff told Page she believed John Bruce, a Wackenhut area manager, had made a sexually harassing comment. Sornsen, who was pregnant at the time, stated Bruce asked her if she was "going to breast-feed or bottle-feed" her baby. Sornsen also told Page that she believed some files were being moved out of her office to a location farther away. Although she claims this was somehow related to her pregnancy, she admits she was provided with all of the materials she needed to perform her job.

Page told Sornsen he would speak to Bruce about the comments. No further comments were made, and Sornsen stated she was satisfied with Page's response to this incident. See, Sornsen Depo. p. 102; Page Depo. p. 51.

B. Larry Casady, Jr.

On August 13, 2001, Anderson received a phone call from Larry Casady, Jr.'s father.[2] Mr. Casady's son worked at Wackenhut's Roseville office from sometime in 1999, until January, 2000. The

---

[2]Because Larry Casady, Jr., shares the same name with his father, all references herein to Casady, unless stated to the contrary, are to Larry Casady, Jr.

caller informed Anderson that his son's drug test results had been altered by a human resource manager at Wackenhut's Roseville office. Anderson then spoke with John Bruce about the phone call and they decided to investigate.

They began by locating Casady's employment file. On examination, they discovered a blank space on the form next to the line where his marijuana test result should have been recorded. They then requested a copy of his original drug test from Medtox, the company which administered the drug test screen. That test showed a positive marijuana drug finding for Casady, as opposed to the blank space seen in his employment file.

Part of Sornsen's job as human resource manager included new employee processing and orientation. She was also responsible for updating personnel records and auditing employee files. In her deposition, Sornsen acknowledges working on Casady's employment file, and that she checked off his drug test results as having been received in September, 1999.

Sornsen admits Casady was an overnight guest in her and her husband's home, and that she told him about the Wackenhut job opportunity. She also acknowledges conducting his orientation, but denies hiring him, despite her admission that her initials appear on much of his paperwork.[3]

---

[3]Ms. Sornsen claims she was not involved in the interview or hiring process. She admits, however, that she was responsible for auditing employee files, including Casady's. See, Sornsen Depo., pp. 183-189.

As part of the investigation, Anderson personally met with Casady's father and independently verified the allegations made by him with regard to plaintiff's husband's criminal record and alleged operation of a methamphetamine lab with Casady.

C. Sornsen's Termination

Following the investigation, John Bruce, Patty Morman of Human Resources, and Carl Page decided to terminate Ms. Sornsen for failing to report Casady's positive drug test. Wackenhut's investigation found that Sornsen was faxed a copy of Casady's positive test, but that she deliberately failed to report that finding. Wackenhut states that had the finding been properly recorded, Casady would not have been hired.

Sornsen denies altering the drug test results, and further denies having any conversations with Casady admitting that she did. Her statement is deeply undermined by Casady's deposition testimony, wherein he stated he had a conversation with Sornsen about the results of his drug test, and that Sornsen told him, "You failed miserably," and "Don't worry about it, I'll take care of it, just go to work." Id.

II. Analysis

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Liberty Lobby, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

Here, plaintiff seeks to recover under Title VII claiming it is, ". . . unlawful for an employer to discriminate against an employee because of the employee's opposition to an unlawful employment practice made unlawful under Title VII or because of the employee's participation in an investigation, proceeding, or hearing under Title VII." Hanna v. Boys and Girls Home and Family Services, Inc., 212 F. Supp.2d 1049, 1065 (N.D. Iowa 2002) (citing 42 U.S.C. § 2000e).

In the absence of direct evidence of discrimination, the familiar burden shifting analysis of McDonnell Douglas applies.[4] Cronquist v. City of Minneapolis, 297 F.3d 920, 926 (8th Cir. 2001). This requires plaintiff to first establish a prima facie case of retaliatory discrimination. In order to make such a showing, a plaintiff must establish by a preponderance of the evidence that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) that there was a causal connection between the adverse employment action and the protected activity. Rheineck v. Hutchinson Technology, Inc., 261 F.3d 751, 757 (8th Cir. 2001). If plaintiff establishes her prima facie case, the burden shifts to defendant to produce a legitimate, non-retaliatory reason for the termination. Id.

---

[4]Notwithstanding plaintiff's suggestion that she has "direct evidence of discrimination," see, Pl's. Memo. in Opp'n. to Def's. Mot. for Summ. J., pp. 15, she does not suggest the Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) analysis should be used here. The only hint of such a suggestion came in the form of a letter to the Court supplemented by a published decision from the Eighth Circuit Court of Appeals. In that letter, plaintiff cites the Eighth Circuit's recent decision in Mohr v. Dustrol, Inc., 306 F.3d 636 (8th Cir. 2002), claiming the case has "direct application to the direct evidence issues of the Summary Judgment argument. . . ." This claim is made despite the absence of any such argument throughout the complaint, the statement of the case, the parties' briefs, and oral argument. Until receipt of this letter, it appeared that the parties agreed this case was to be considered under the McDonnell Douglas v. Green Corp., 411 U.S. 792 (1973), rubric. Despite this, even if this Court were inclined to utilize the Price Waterhouse mixed-motive analysis at this late stage, plaintiff's claim would still fail because she has failed to offer any admissible evidence demonstrating that an illegal criterion was a motivating factor in the employment termination decision.

(citing Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)). If defendant provides a legitimate, non-retaliatory reason for the termination, the burden shifts back to the plaintiff to demonstrate that the articulated reason is pretextual.[5] Id.

Although the Court has serious doubts about Sornsen's ability to successfully establish a prima facie case of retaliatory termination, the Court assumes, for purposes of this motion, that she is able to do so. As a result, the Court looks to Wackenhut to provide a legitimate, non-retaliatory reason for Sornsen's termination.

Wackenhut states Sornsen was terminated for falsification of company documents in violation of its policies. It bases this statement on the investigation undertaken after the call from Casady's father, during which it was revealed that Casady had tested positive for marijuana use. Wackenhut further claims Sornsen had Casady's personnel file under her control.

The Court considers Wackenhut's belief that Sornsen falsified company documents in order to conceal a positive drug test to be a legitimate, non-discriminatory reason for her termination. It is well-established that falsification of company documents is a legitimate reason for termination. See, Kiel v. Select

---

[5]Both Title VII retaliation claims and MHRA reprisal claims are analyzed under the McDonnell Douglas model. See, Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001); Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999).

Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999); Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d 558, 560 (8th Cir. 1997); Price v. S-B Power Tool, 75 F.3d 362, 364 (8th Cir. 1996). Therefore, Wackenhut, having successfully met its burden of production, the burden then shifts to Sornsen to demonstrate that Wackenhut's proffered reason was pretextual.

At this stage of the McDonnell Douglas analysis it is "the rule in [the Eighth] Circuit . . . that an employment discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a factual issue as to whether the employer's proffered reasons are pretextual, and (2) creates a reasonable inference that a [prohibited motive] was a determinative factor in the adverse employment decision." Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001) (citing Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

In offering evidence to satisfy this burden at the summary judgment stage, "the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Hanna v. Boys and Girls Home and Family Services, Inc., 212 F. Supp. 2d 1049, 1054 (N.D. Iowa 2002)

(quoting Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324) (citations omitted).

For purposes of summary judgment, a verified complaint "is the equivalent of an affidavit," Williams v. Adams, 935 F.2d 960, 961 (8th Cir. 1991), and, as with affidavits, verified complaints must be based on personal knowledge. Fed. R. Civ. P. 56(e) mandates that affidavits "be made on personal knowledge, . . . set forth such facts as would be admissible into evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." In addition, "affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. Univ. of Minnesota, 60 F.3d 423, 428 (8th Cir. 1995). "A court may not consider affidavits that do not satisfy the requirements of Fed. R. Civ. P. 56(e)." Id.

To support her position that Wackenhut's proffered explanation is pretextual, Sornsen first offers the verified amended complaint ("Amended Complaint") of Abigail Adams, a former Wackenhut employee. The Amended Complaint, filed in Hennepin County District Court, purports to recount a conversation in which Vice President Page allegedly "told her that [the plaintiff] would be fired." Amended Complaint, Par. 11. In addition, the Amended Complaint

states, "the Manager made it clear to [Adams] that [plaintiff] was going to be retaliated against."[6] Id.

Even taking the statements in the Amended Complaint to be timely and properly considered, they fail to demonstrate a genuine issue of material fact for trial by failing to provide information from which the Court can find Ms. Adams possesses the knowledge she claims. Her Amended Complaint fails to demonstrate where the alleged statements were made, who else if any one was present, the circumstances which prompted Page to make the alleged statements, and any basis upon which Ms. Adams can authoritatively state how Page "made it clear that [plaintiff] was going to be retaliated against." The Amended Complaint merely states that "the discussion occurred shortly after [plaintiff] made complaints of discriminatory treatment." Bald assertions and conclusory opinions lacking in factual support do not create triable issues of fact.

Going further, even if this Court found Ms. Adams' statements admissible as evidence, they do not demonstrate the requisite discriminatory animus toward plaintiff based on either her sex or in retaliation for her prior complaints. Even if the Court accepted a statement "that [plaintiff] was going to be retaliated

[6]The Court notes that Ms. Adams' original complaint dated May 30, 2002, contained no mention of this statement. Her Amended Complaint, dated August 9, 2002, was delivered to this Court two days before the scheduled summary judgment oral arguments. The Court declines to accept this document; it was filed far beyond the date and time set for motion submissions. See, D. Minn. LR 1.3, and 7.1 (b)(2)(B).

against," Ms. Adams does not suggest the basis for the claimed retaliation. As such, the Amended Complaint is wholly inadequate to create a genuine issue of material fact for plaintiff's claim of retaliatory/reprisal discrimination under Title VII and the MHRA.

Plaintiff next offers the deposition testimony of Wackenhut employee John Goserud ("Goserud") as evidence of defendant's retaliatory motive. According to Goserud, a meeting was held, at which John Bruce stated, "there would be retaliation if people went over his head and went to Carl Page with issues." Def's. Ex. 8, Depo. of John Goserud, p. 12. The problem with Goserud's statement is that he did not attend the meeting about which he testifies. See, Goserud Depo., p. 11. As such, his statement is nothing more than inadmissible hearsay; it does not fulfill Rule 56(e)'s requirement that statements in reply to a motion for summary judgment "be made on personal knowledge, . . . set forth such facts as would be admissible into evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated." Fed. R. Civ. P. 56(e).

It is clear that deposition testimony based on inadmissible hearsay cannot defeat a motion for summary judgment. See, Cronquist, 237 F.3d at 927; Davidson & Schaff v. Liberty Nat'l. Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995). Alternatively, even if this Court were to allow this hearsay evidence as admissible and factually accurate, it still fails to create a

reasonable inference that a prohibited motive was a determinative factor in plaintiff's termination. An employee can be fired, even on a retaliatory basis, as long as the basis for retaliation is not one protected by law. Neither Title VII nor the MHRA protects people who go over other people's heads with issues. At best, this statement is an isolated "stray" remark unconnected to the decision-making process that is insufficient to support an inference of pretext.

Plaintiff also argues for an inference of pretext based on her assertion that "biased investigators" conducted the Casady investigation, and because she was "singled out." Her argument is misplaced. The "relevant inquiry in an employment misconduct pretext case is whether the employer believed [the] employee guilty of conduct justifying discharge." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 n. 2 (8th Cir. 1994) (citing Elrod v. Sears Roebuck & Co., 939 F.2d 1446, 1470 (11th Cir. 1991)).

Plaintiff complains she had previously raised sexual harassment complaints against both of the Wackenhut employees who investigated the Casady matter. But it is plaintiff, herself, who voluntarily dismissed any harassment claims against them. She also complains Wackenhut should not have used the father's phone call as the basis of its investigation because he has a criminal record.

This, too, is insubstantial: whatever his criminal record,[7] the information he gave was true, and led to the discovery that a person who had failed a drug test was employed by defendant.

The net result is that, while plaintiff may disagree with the investigative methods in this case, the investigation clearly revealed evidence of falsification of employment records concerning an employee's drug test results. If this was believed by the defendant -- and here it clearly was -- this was conduct warranting termination. "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the company's rules . . . ." Kiel, 169 F.3d at 1136.

It is well-settled in the Eighth Circuit that "employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Kiel v. Select Artificials, 169 F.3d 1131, 1136 (8th Cir. 1999) (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)). Absent sufficient evidence to demonstrate defendant terminated plaintiff's employment because she

---

[7]There is no evidence whatsoever that Wackenhut knew that Casady's father had a criminal record at the time it received his phone call. To the contrary, Page, Bruce, and Anderson all deny prior knowledge of his criminal record.

complained about harassing behavior, plaintiff's claim fails as a matter of law. Sornsen has failed to produce any evidence showing Wackenhut did not believe she falsified the drug test results of Casady, and therefore, she has failed to raise any questions of material fact regarding an illegal motive or intent.

In short, a company may conduct its business while reasonably relying on evidence which may not fulfill a "beyond a reasonable doubt" standard. Here, the Court finds the evidence concerning Casady's drug use, and plaintiff's association with him -- including pointing him to the job, having him stay in her home, having her initials on his employment records, and failing to record a positive job-disqualifying drug test -- fully justify Wackenhut's presumption that she was complicitous in his employment and the coverup of his drug use.

Plaintiff also summarily suggests that an inference of pretext may be drawn from a "lengthy history of sexual harassment and retaliation in the workplace." This allegation, however, does nothing to prove plaintiff's claim of retaliatory/reprisal discrimination. First, plaintiff has voluntarily dismissed all of her claims of sexual harassment against Wackenhut, and as a result, there are no claims of sexual harassment remaining before this Court. All that remains is plaintiff's singular claim of retaliatory/reprisal discrimination.

Next, it goes without saying that this is not a class action, and as much as plaintiff may wish to save her claim by piggy-backing on the allegations of others, the law does not permit her to do so.

Finally, and most importantly, even if these allegations were somehow relevant, the evidence she proffers is inadmissible and falls far below the level which might compel a trial on the fact.

III. Conclusion

Assuming Sornsen could establish a prima facie case of retaliatory/reprisal discrimination, her claim still fails; there is insufficient evidence upon which to conduct a trial to establish that Wackenhut's legitimate, non-retaliatory reason for termination is pretextual. Accordingly, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 26th, 2003

JAMES M. ROSENBAUM
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.